UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS BOOKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 23 C 5897 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| THOMAS J. DART, Cook County Sheriff, | ) |
| COOK COUNTY, ILLINOIS, and | ) |
| DEPUTY ANGEL GARCIA, | ) |
| Star Number 15432, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

In August 2022, Plaintiff Demetrius Booker was a pretrial detainee at the Cook County Jail ("CCJ"), which the Cook County Department of Corrections ("CCDOC") operates. Booker filed this lawsuit complaining that Officer Angel Garcia assaulted him while he waited for CCDOC staff to transport him back to CCJ after appearing in court. After filing a grievance with CCDOC and only receiving a response that indicated that CCDOC was still investigating his grievance, Booker sued Defendants Officer Garcia, Cook County Sheriff Thomas Dart, and Cook County in this Court pursuant to 42 U.S.C. § 1983. Now Defendants request summary judgment on the grounds that Booker failed to exhaust his administrative remedies.[1] Because the grievance appeals process became unavailable to Booker, the Court denies Defendants' motion for summary judgment on the limited issue of exhaustion.[2]

---

[1] While Booker takes issue with Defendants' use of the word "dismissal" in their motion, Defendants clearly seek summary judgment on the limited issue of exhaustion.

[2] Because the Court does not find that there are any factual disputes regarding Plaintiff's efforts to exhaust, the Court will not hold a *Pavey* hearing and has decided this issue on the undisputed statements of facts provided by the parties. *See Martinez-Lopez v. Wurth*, No. 17 C 7301, 2020 WL 1530742, at *5

# BACKGROUND[3]

## I.    CCDOC Grievance Procedure

CCDOC maintains a formal detainee grievance procedure. A grievance is a written form that individuals in custody may complete when they have been "injured, harassed, abused, or threatened." Doc. 51-3 ¶ 5. These forms are available in each living unit or by request from Correctional Rehabilitation Workers ("CRWs") and Individual in Custody Services ("IIC Services") staff members.[4] If a form is not available, a detainee may use a blank piece of paper to file a grievance.

The grievance process requires detainees to submit a grievance form within 15 days of the alleged offense. A detainee can give their completed grievance form directly to the CRW or a Correctional Supervisor when those employees make their daily rounds. Upon receipt of a grievance form, the CRW, IIC Services Supervisor, or Correctional Supervisor signs and dates

---

(N.D. Ill. Mar. 31, 2020) ("Where there are no factual disputes regarding exhaustion, however, a *Pavey* hearing is not required."); *Baker v. Myers*, No. 23 CV 1739, 2024 WL 4976271 (S.D. Ill. Dec. 4, 2024) (denying the defendants' motion for summary judgment on the issue of exhaustion without holding a *Pavey* hearing because the court found no disputes of material facts); *Boclair v. Hulick*, No. 10 C 978, 2012 WL 462938, at *2 n.1 (S.D. Ill. Feb. 13, 2012) (the magistrate judge "determined that there were no factual disputes as to exhaustion, and therefore a *Pavey* hearing was not necessary to resolve the solely legal questions relating to exhaustion in this case.").

[3] The Court derives the facts set forth in this section from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. The Court takes these facts in the light most favorable to Booker, the non-movant. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

The Court notes, however, that the parties did not comply with the Court's applicable summary judgment procedures, found on the Court's webpage in its Standing Orders. Although the Court has overlooked these violations in the interest of resolving the parties' arguments on their merits, it expects that the parties will fully comply with the Court's procedures going forward.

[4] IIC Services processes, tracks, organizes, and retains grievance documents submitted by individuals in the custody of the Cook County Sheriff and CCDOC. *See* Doc. 51-3 at 2.

the form and then immediately provides the detainee with a copy of the submitted grievance. When a detainee receives a response to their grievance, they must file an appeal within 15 days.

**II.      Booker's Grievance**

Booker, a former CCJ detainee in CCDOC custody who is currently housed at Illinois River Correctional Center, was waiting with a group of other detainees for CCDOC staff to transport him back to CCJ after appearing in court on August 23, 2022. Booker left the waiting area and entered a nearby restroom without receiving permission. Officer Garcia followed Booker and used force to remove him from the restroom, resulting in injuries to Booker. On August 30, 2022, Booker submitted a grievance form detailing the altercation and naming Officer Garcia as the accused.

On September 12, 2022, an administrative assistant from IIC Services e-mailed Booker's grievance to the Cook County Sheriff's Office of Professional Review ("OPR") for review and/or investigation. Also on this date, Booker received a grievance response/appeal form, which stated that IIC Services referred his grievance to OPR. Booker signed and dated the grievance response/appeal form that same day. The form, directly below Booker's signature, states:

> To exhaust administrative remedies, a grievance appeal must be made on this form and within 15 calendar days of the date the individual received the above notated response. An appeal must be filed in <u>ALL</u> circumstances in order to exhaust administrative remedies, regardless if the grieved issue(s) have been referred for further review and/or investigation. Any pending O.P.R. review or investigation, is <u>NOT</u> part of the grievance appeal process.

Doc. 51-4 at 21. The form also attached an IIC Services document, which states:

> Although this R/Supv. cannot substantiate or deny your allegation(s), please be advised that your grievance has been forwarded to the Office of Professional Review and Divisional Superintendent for their review and/or investigation.

3

> You may follow-up with the Office of Professional Review by contacting their office directly, by utilizing the address below.
>
> To exhaust your administrative remedy (regardless of the OPR investigation review, determination, or outcome) you must appeal this immediate grievance response within 15 calendar days.

Doc. 51-4 at 23 (Spanish translations omitted). Booker did not file an appeal. Instead, on August 22, 2023, Booker filed his complaint.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th

4

Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

Defendants argue that Booker cannot proceed on his claims because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement exists to provide correctional officials the opportunity to address complaints internally before the initiation of a federal suit. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). To have exhausted his administrative remedies, Booker must have grieved his claim through "all steps that the agency holds out," and he must have "do[ne] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). An inmate "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies and thus "is foreclosed by § 1997e(a) from litigating" his claims. *Pozo*, 286 F.3d at 1024.

Of course, "[p]risoners need only exhaust 'available remedies, not remedies that are unavailable.'" *Jackson v. Esser*, 105 F.4th 948, 956–57 (7th Cir. 2024) (quoting *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023)). "If administrative remedies are genuinely unavailable or nonexistent . . . [the courts] consider the prisoner to have satisfied the exhaustion requirement." *Id.* at 957 (citing *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). "The 'availability' of a

remedy is not a matter of what appears on paper, but, rather, "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009). An administrative remedy is not "unavailable" if it is merely confusing or ambiguous. *See Ross v. Blake*, 578 U.S. 632, 644 (2016). But when a remedy is so opaque that it becomes "essentially 'unknowable,'" such that no ordinary prisoner can make sense of what it demands, then prisoners are no longer required to exhaust. *Id.* at 643–44 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1323 (11th Cir. 2007)). The Seventh Circuit recently has stressed "that prisons should create understandable grievance procedures, ones clear and transparent enough to allow ordinary inmates to navigate them." *Hacker*, 62 F.4th at 1078.

Although Defendants argue that Booker failed to exhaust his administrative remedies through CCJ's grievance procedure, they fail to substantively address or otherwise distinguish this case from binding Seventh Circuit precedent addressing this exact issue. In *Hacker*, the plaintiff, an inmate at CCJ, received a grievance response notifying him of a referral to OPR and including similar language requiring him to appeal within 15 days. *Id.* at 1079. In the subsequent civil rights litigation, the defendants argued that the plaintiff failed to exhaust his administrative remedies because he did not file an appeal within the 15-day window after receiving the grievance response. *Id.* at 1080. But the Seventh Circuit rejected this argument. While the grievance response indicated that the plaintiff needed to appeal within 15 days, the court concluded that a recipient would not "conclud[e] there was anything to appeal" because "no ordinary prisoner would think to appeal an update that the jail was following its own rules" by referring the grievance to OPR. *Id.* at 1080–81. The court also noted that CCJ did not tell the plaintiff how long OPR would take to complete its investigation. *Id.* at 1081. Ultimately, the court held that CCJ's "confusing" grievance procedures became unavailable to the plaintiff after

6

CCJ involved OPR, and thus his failure to appeal the grievance response did not foreclose his claims. *Id.* at 1081.

Perhaps in response to *Hacker*, the grievance response/appeal form in this case added language telling Booker that he must act in response to the OPR referral to exhaust CCJ's grievance procedure:

> To exhaust administrative remedies, a grievance appeal must be made on this form and within 15 calendar days of the date the individual received the above notated response. **An appeal must be filed in ALL circumstances in order to exhaust administrative remedies, regardless if the grieved issue(s) have been referred for further review and/or investigation.** Any pending O.P.R. review or investigation, is NOT part of the grievance appeal process.

Doc. 51-4 at 21 (bolded emphasis added). Further, the response's attachment states: "To exhaust your administrative remedy (regardless of the OPR investigation review, determination, or outcome) **you must appeal this immediate grievance response within 15 calendar days.**" *Id.* at 23 (bolded emphasis added). Moreover, the response/appeal form provides space for Booker to explain the basis for his appeal. *See id*. at 21.

However, Defendants have not even attempted to explain how this added language cures the opacity of the grievance procedure as identified by the court in *Hacker*. *See* 62 F.4th at 1081 ("The notice of OPR's referral told Hacker next to nothing, for OPR's responsibility included investigating allegations of guard abuse. . . . Put simply, no ordinary prisoner would think to appeal an update that the jail was following its own rules."). While the supplementary language certainly provides more "clear instruction" such that Booker may "have known he was supposed to appeal th[e] decision" in theory, an OPR referral lacking any detail into OPR's investigative actions still suggests that a detainee "should stand by while OPR investigated his complaint against Officer [Garcia]." *Hacker*, 62 F.4th at 1080–81. Without a decision on the merits of

7

Booker's grievance, Booker seemingly would have needed to appeal the OPR referral, a "decision he did not desire to appeal, because he wanted a full investigation." Doc. 58 at 9. As another court in this district addressing the exact same language recently observed, "[i]t seems wholly counterintuitive—bizarre, really—to require an inmate to appeal a notice that offers no determination of the merits of his grievance but merely states that (1) the grievance was referred to OPR for investigation, and (2) any investigation by OPR is not part of the grievance appeal process." *Taylor v. Dart*, No. 23 C 16024, 2025 WL 1233988, at *5 (N.D. Ill. Apr. 29, 2025). Importantly, the Seventh Circuit has explained:

> Indeed, it is difficult to imagine what purpose an appeal of the grievance response form could possibly have served. If [the plaintiff] had appealed the referral notice, the Jail would have likely reiterated that it referred the grievance to OPR and advised him to wait for the results of that investigation. Under CCDOC policy, social workers who collect grievances do not make any determination on the merits of a grievance and merely forward the grievance to an entity for response. There is no evidence suggesting that the Jail had a different protocol for prisoners who appealed their referrals. And what if [the plaintiff] attempted to sue after receiving this unsatisfactory response to his appeal? The district court might have dismissed his case because his OPR investigation was still pending.

*King v. Dart*, 63 F.4th 602, 607 (7th Cir. 2023).[5]

In sum, the response/appeal form's updated language still does not make the grievance process available because it does not clarify what action a detainee should take other than to futilely appeal a notification that ostensibly showed "the process was working and moving forward as it should." *Hacker*, 62 F.4th at 1081. Consequently, CCJ's "unintuitive, conflicting

---

[5] The response/appeal form in *King* stated: "To exhaust administrative remedies, grievance appeals must be made within 15 calendar days of the date the inmate received the response. An appeal must be filed in all circumstances in order to exhaust administrative remedies." 63 F.4th at 605. Further, the response/appeal form's attachment stated: "Your allegation(s) have been forwarded to the Offices of Professional Review [('OPR')] and Divisional Superintendent for review and/or investigation. You may follow-up with [OPR] by contacting their office directly, by utilizing the address below or submitting an inmate request form, to speak with the Divisional Superintendent." *Id.* at 604–05.

8

directions regarding the grievance appeals process[ ] effectively obscure[d] the process such that 'there was no conceivable step for [him] to take.'" *Id.* at 608 (quoting *Reid v. Balota*, 962 F.3d 325, 330 (7th Cir. 2020)). Exhaustion, therefore, does not stand as a bar to Booker's pursuit of his claims.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment on the limited issue of exhaustion [50]. The Court rejects Defendants' exhaustion defense and allows Booker to proceed with his claims.

Dated: August 14, 2025

_____
SARA L. ELLIS
United States District Judge